## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| CLAUDIA JODONEILIA MELDAHL, and STEVEN FINLEY MELDAHL, | Civil No.  14-4465 (JRT/FLN) |
| Plaintiffs, | |
| v. | |
| CITY OF BROOKLYN CENTER, CARVER COUNTY, CLAY COUNTY, CITY OF CRYSTAL, CITY OF EDEN PRAIRIE, CITY OF EDINA, CITY OF EXCELSIOR, CITY OF GREENWOOD, HENNEPIN COUNTY, CITY OF LE CENTER, MCLEOD COUNTY, CITY OF MINNEAPOLIS, MINNEAPOLIS PARK & RECREATION BOARD, CITY OF NEW HOPE, CITY OF PRIOR LAKE, RAMSEY COUNTY, CITY OF SAUK CENTRE, CITY OF ST. PAUL, CITY OF SHOREWOOD, TODD COUNTY, CITY OF TONKA BAY, WRIGHT COUNTY, MICHAEL CAMPION, *in his individual capacity as the Commissioner of the Department of Public Safety*, RAMONA DOHMAN, *in her individual capacity as the Commissioner of the Department of Public Safety*, JOHN AND JANE DOES (1-300), DEPARTMENT OF PUBLIC SAFETY DOES (1-30), and ENTITY DOES (1-50). | **AMENDED MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS** |
| Defendants. | |

Jonathan A. Strauss and Sonia L. Miller-Van Oort, **SAPIENTIA LAW GROUP**, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402, for plaintiffs.

Stephanie A. Angolkar, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendant Cities of Brooklyn Center, Crystal, Eden Prairie, Excelsior, Greenwood, LeCenter, New Hope, Prior Lake, Sauk Centre, Shorewood, and Tonka Bay.

Margaret Skelton, **RATWIK ROSZAK & MALONEY**, 730 Second Avenue South, Suite 300, Minneapolis, MN 55402, for defendant Counties of Carver, Clay, McLeod, Todd, and Wright.

Mark P. Hodkinson, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for defendant City of Edina.

Beth A. Stack and Toni A. Beitz, Assistant County Attorneys, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, 300 South Sixth Street, Suite A-2000, Minneapolis, MN 55487, for defendant Hennepin County.

Tracey N. Fussy, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, for defendant City of Minneapolis.

Daniel A. Louismet, **RICE, MICHELS & WALTHER LLC**, 206 East Bridge-Riverplace, 10 Second Street N.E., Minneapolis, MN 55413, for defendant Minneapolis Park & Recreation Board.

Kimberly R. Parker and Robert B. Roche, Assistant County Attorneys, **RAMSEY COUNTY ATTORNEY'S OFFICE**, 121 Seventh Place East, Suite 4500, St. Paul, MN 55101, for defendant Ramsey County.

Portia M. Hampton-Flowers, Assistant City Attorney, **SAINT PAUL CITY ATTORNEY'S OFFICE**, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, for defendant City of Saint Paul.

Oliver J. Larson, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101, for defendants Michael Campion and Ramona Dohman.

Plaintiffs Claudia JoDoneilia Meldahl ("Claudia") and Steven Finley Meldahl ("Steven") (together, the "Meldahls") bring this action under the Driver's Privacy Protection Act ("DPPA"), alleging that law enforcement officers from many counties and cities in Minnesota illegally accessed their personal driver's license information via the Minnesota Department of Public Safety's ("DPS") Division of Driver and Vehicle Services ("DVS") database ("DVS Database").  The various defendants have filed nine

motions to dismiss, claiming that many of the Meldahls' claims are barred by the applicable statute of limitations, that the Meldahls have failed to state plausible DPPA claims, and that the rule of lenity and the doctrine of qualified immunity defeat the Meldahls' claims. Because the statute of limitations does bar many of the Meldahls' claims, the Court will grant in part or in full seven of the nine motions to dismiss. Pursuant to this Court's prior decisions, and a recent decision by the United States Court of Appeals for the Eighth Circuit, the Court will also grant in full the motion to dismiss of the DPS defendants. Finally, based on an assessment of whether the remaining claims are against defendants who have engaged in a suspicious pattern of accesses, the Court will dismiss claims against all remaining defendants, except Claudia Meldahl's claims against Eden Prairie and Carver County.

## BACKGROUND

The Meldahls filed their complaint on October 10, 2014, asserting one DPPA count against various city and county defendants, along with unnamed individuals and various officials with the DPS. (Compl. ¶¶ 386-408, Oct. 23, 2014, Docket No. 1.) Specifically, they named the following defendants:

- Cities of Brooklyn Center, Crystal, Eden Prairie, Edina, Excelsior, Greenwood, LeCenter, Minneapolis, New Hope, Prior Lake, Sauk Centre, St. Paul, Shorewood, Tonka Bay[1];
- Counties of Carver, Clay, Hennepin, McLeod, Ramsey, Todd, and Wright;

---

[1] Excelsior, Greenwood, Shorewood, and Tonka Bay operate the South Lake Minnetonka Police Department through a joint powers agreement. (*Id.* ¶ 120.)

- Minneapolis Park & Recreation Board;
- Entity/municipality Does (1-50);
- Defendant John and Jane Does (1-300);
- Michael Campion, former Minnesota DPS Commissioner, and Mona Dohman, current Minnesota DPS Commissioner; and
- DPS Does (1-30).

(*Id.* ¶¶ 14-45.)

Steven is a well-known, large-scale Minneapolis landlord who has had many legal battles with the Minneapolis Housing Department. (*Id.* ¶¶ 46-52.) In 2010, Steven had an altercation with a Minneapolis housing inspector that led to his being charged for assault, but the charge was later dismissed. (*Id.* ¶ 53.) Steven claims the lookups of his driver's license information in this case are not tied to his assault arrest. (*Id.* ¶ 55.) The only other criminal incident involving Steven occurred more than twenty-five years ago. (*Id.* ¶ 56.) Claudia owned a housekeeping business from 1997 to 2006. (*Id.* ¶ 57.) She was stalked by a client from 2005 through 2010. (*Id.* ¶ 58.) Any lookups associated with the police report in that case have been excluded. (*Id.* ¶ 59.) The stalker had a relative who worked in law enforcement. (*Id.* ¶ 60.) Claudia and Steven have been married since 2007; they previously lived in Edina and Waconia and now live in Eden Prairie. (*Id.* ¶¶ 61-63.) Claudia has not had a traffic violation since 2004 or earlier; Steven has had five, but he has excluded lookups associated with those incidents from this case. (*Id.* ¶¶ 66-67.)

In 2014, the Meldahls requested an audit from the DPS of the instances in which law enforcement officers had searched for their names in the DVS Database. (*Id.* ¶¶ 279-

83.)  Based on that audit, they allege that their names were searched, or "obtained" under the DPPA, roughly 250 times by employees of the named defendants.  (*Id.* ¶ 284.)  They attach as Exhibits A and B of their complaint the list of those searches, separated by the government unit that performed them.  (*Id.*, Exs. A & B.)  Because of the sheer number of searches, the Court will not replicate the list in this Order.

The Meldahls filed their complaint on October 23, 2014, alleging one DPPA count against each of the defendants,[2] based on the 250 "obtainments" of their driver's license information.  Based on (1) their prominence in the community – specifically Steven's public reputation as a landlord; (2) the assertion that they were never investigated or prosecuted in any of the defendant communities; (3) the assertion that they had never committed crimes or been sued in the defendant communities, or been involved in any civil, criminal, administrative, or arbitral proceeding in the defendant communities; and (4) the fact that many searches occurred late at night, occurred on the same date by unrelated entities, or otherwise constituted a suspicious pattern, the Meldahls claim that all of the searches listed in Exhibits A and B were not for permissible purposes under the DPPA.  (*Id.* ¶¶ 84-199, 291-95.)  To the extent the Meldahls were involved in a criminal proceeding (e.g., Steven's altercation with a housing inspector), they have removed those lookups from the audit and not included them in their complaint.  (*Id.* ¶ 154.)  And to the extent certain officials might need their information – for example Minneapolis housing

---

[2] The Court notes that Steven and Claudia do not necessarily claim that each defendant illegally accessed each of their driver's license information.  Instead, in some instances, officers at a given municipality may only have allegedly accessed Claudia's information, or just Steven's.

inspectors needing to reach Steven – those officials would have already had their contact information and would not have needed to look them up.  (*Id.* ¶¶ 161, 169.)   The Meldahls also cite the Legislative Auditor's testimony that at least half of Minnesota law enforcement officers are misusing the DVS Database.  (*Id.* ¶ 375.) As for the DPS Commissioners and unidentified DPS defendants, the Meldahls allege a violation of the DPPA because the DPS created a loosely controlled system that allows for law enforcement personnel to look up driver's license information at will, for any reason and without any checks on the reasons behind a lookup.  (*Id.* ¶¶ 200-75, 367-85.)   The Meldahls note that audits of DPPA data were not even available until August 2011.  (*Id.* ¶ 276.)

In December and January of 2015, various defendants filed nine motions to dismiss.  Specifically, the defendants argue that many of the claims are time-barred by the applicable statute of limitations.  For those claims that are not time-barred, the defendants argue that the Meldahls' complaint should be dismissed because they have (1) failed to show that simply viewing their information amounts to an obtainment; and (2) failed to show that the lookups were not for permissible reasons.  The defendants ask for leniency under the rule of lenity.  They also argue that their claims are barred by law enforcement officers' qualified immunity.  Finally, the defendants contend that any claims that survive the motions to dismiss should be severed.

**DISCUSSION**

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).  Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II.     DPPA

### A.     Statute of Limitations

The DPPA contains no explicit statute of limitations provision.  *See* 18 U.S.C.

§ 2724.  As a result, since the statute was enacted after 1990, *see Reno v. Condon*, 528

U.S. 141, 143 (2000), the general catchall statute of limitations found in 28 U.S.C. § 1658

applies to DPPA claims.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382

(2004) (concluding that Section 1658 governs statutory claims that contain no explicit

statute of limitations and are "made possible by a post-1990 [statutory] enactment").

Section 1658 contains the following two provisions:

(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 . . . may be brought not later than the earlier of—

> (1) 2 years after the discovery of the facts constituting the violation; or

> (2) 5 years after such violation.

28 U.S.C. § 1658.

In its prior decision in *Myers v. Aitkin County*, this Court considered whether the

standard accrual rule (dictating that the limitations period runs from the date the injury

**occurred**) or the discovery rule (dictating that the limitations period runs from the date

the injury was **discovered**) applies to Section 1658 and the DPPA.  *Myers v. Aitkin Cty.*,

No. 14-473, 2014 WL 7399182, at *9-*10 (D. Minn. Dec. 29, 2014).  The Court held that

the standard accrual rule applies.  *Id.* at \*10.  More recently, the Eighth Circuit weighed in on this issue, affirming district court decisions that reached the same conclusion as this court in *Myers*.  *See McDonough v. Anoka Cty.*, --- F.3d ---, 2015 WL 4940110, at \*7 (8ᵗʰ Cir. Aug. 20, 2015) ("In light of the foregoing policy considerations, as well as the text and structure of § 1658, we conclude that the statute of limitations for these DPPA violations began to run when the violations occurred.  We thus affirm the dismissal of claims of violations that occurred more than four years prior to the filing of the complaints.")

As a result, in this case, as in *Myers*, "the four-year limitations period in Section 1658(a) runs from the time of the occurrence(s) of the alleged injuries against [the Meldahls]."  *Myers*, 2014 WL 7399182, at \*10.  To fit within that limitations period, given that the complaint in this case was filed on October 23, 2014, "the alleged illegal obtainment of [the Meldahls'] driver's license information must have occurred on or after" October 23, 2010.  *Id.*

As the defendants correctly point out, many of the alleged wrongful accesses of the Meldahls' driver's license information that underlie this complaint occurred before October 23, 2010.  As a result, before reaching any other issues or arguments in this case, the Court will grant, either in full or in part, all motions to dismiss as to accesses that occurred prior to October 23, 2010.

Specifically, the Court will grant in part the motion to dismiss of Hennepin County,[3] (Mot. to Dismiss of Hennepin County, December 11, 2014, Docket No. 24), as to the all but four accesses that occurred before October 23, 2010 or were otherwise voluntarily dismissed, (Compl., Ex. B at 5-6); *see also supra* note 3.  The Court will also grant in part the motion to dismiss of the City of Minneapolis, (Mot. to Dismiss of City of Minneapolis, Dec. 19, 2014, Docket No. 31), as to the all but eight accesses that occurred before October 23, 2010, (Compl., Ex. A at 3; *id.*, Ex. B at 6-8).  The remaining accesses are all accesses by the Minneapolis Police Department.  (Compl., Ex. B at 7.)  The Court need not reach the parties' dispute over whether accesses by the Minneapolis Department of Regulatory Services can be challenged via DPPA claims against the City of Minneapolis, (Pls.' Opp'n to City of Minneapolis at 1 n.1, Dec. 31, 2014, Docket No. 41), since those accesses all occurred prior to October 23, 2010 and claims based on them will likewise be dismissed.

The Court will grant in full the motion to dismiss of the Minneapolis Park & Recreation Board, (Minneapolis Park & Recreation Board Mot. to Dismiss, Dec. 23, 2014, Docket No. 35), since all accesses by that entity occurred before October 23, 2010 (Compl., Ex. B at 8).  The Court grants in part the motion to dismiss of defendant Cities

---

[3] The Meldahls' claims against Hennepin County are based on allegedly illegal accesses of Steven's information conducted by the Hennepin County Attorney's Office, the Hennepin County Community Corrections Office, and the Hennepin County Sheriff's Office.  (Compl., Ex. B at 5-6.)  The claims are not based on accesses by the Hennepin County Courts staff.  (*Id.*)

Additionally, the Meldahls voluntarily dismiss claims based on several accesses against Hennepin County.  (Pls.' Opp'n to Hennepin County at 2 n.1, Dec. 31, 2014, Docket No. 40.)  The Court will dismiss those claims.

of Brooklyn Center, Crystal, Eden Prairie, Excelsior, Greenwood, LeCenter, New Hope, Prior Lake, Sauk Centre, Shorewood, and Tonka Bay, (Cities' Mot. to Dismiss, Jan. 9, 2015, Docket No. 44), as to the all but two accesses by those cities that occurred before October 23, 2010, (Compl., Ex. A at 2-3; *id.*, Ex. B at 4, 8).  Since there were only timely accesses by Eden Prairie against Claudia and Prior Lake against Steven, the Court will dismiss all claims against Brooklyn Center, Crystal, Excelsior, Greenwood, LeCenter, New Hope, Sauk Centre, Shorewood, and Tonka Bay, based on the statute of limitations.

The Court also grants in part the motion to dismiss of the City of St. Paul, (Mot. to Dismiss of City of St. Paul, Jan. 13, 2015, Docket No. 50), as to the all but one access that occurred prior to October 23, 2010, (Compl., Ex. A at 3; *id.*, Ex. B at 8). Additionally, since the Meldahls' do not object to the Court dismissing the one remaining timely claim against Steven, because the City of St. Paul has provided evidence that that search was for a permitted purpose, (Pls.' Opp'n to City of St. Paul at 2, Jan. 30, 2015, Docket No. 81), the Court will dismiss that claim and grant the City of St. Paul's motion to dismiss in its entirety.

The Court will grant in part the City of Edina's motion for judgment on the pleadings, (Mot. for J. on the Pleadings of City of Edina, Jan. 13, 2015, Docket No. 57), as to the all but one access[4] that occurred prior to October 23, 2010 or was not otherwise

---

[4] A second access, by the Edina Driver License Office, occurred after October 23, 2010. (Compl., Ex. B at 4.)  But the Meldahls do not appear to be challenging the accesses by that office, since their discussion is limited to the Edina Police Department in the complaint.  (*See, e.g.*, Compl. ¶¶ 152-53.)

dismissed,[5] (Compl., Ex. B at 4-5).  Since the only access by Ramsey County occurred after October 23, 2010, (Compl., Ex. B at 8), the statute of limitations is not at issue as to that defendant.

Finally, the Court will grant in part the motion to dismiss of the Counties of Carver, Clay, McLeod, Todd, and Wright.  (Counties' Mot. to Dismiss, Jan. 16, 2015, Docket No. 72.)  The Court will dismiss claims based on the all but eighteen accesses that occurred prior to October 23, 2010.  (Compl., Ex. A at 1-3; *id.*, Ex. B at 4, 6, 8.)  The Court will therefore dismiss based on statute of limitations grounds all claims against McLeod and Todd Counties.

### B.       Obtainment for a Purpose Not Permitted

#### 1.       Governing Law

In order to succeed on a DPPA claim, a plaintiff must establish four elements: "that the Defendants 1) knowingly 2) obtained, disclosed, or used personal information, 3) from a motor vehicle record, 4) for a purpose not permitted." *McDonough*, 2015 WL 4940110, at *9; *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

To establish that the defendants "obtain[ed]" the plaintiff's information – the second element – it is sufficient for a plaintiff to show that "people with access to the DVS Database viewed [the plaintiff's] personal driver's license information." *Myers*, 2014 WL 7399182, at *12.  Many of the defendants dispute this interpretation of the

---

[5] The Meldahls do not object to the Court dismissing claims based on Edina accesses on July 19, 2008 and August 20, 2012.  (Pls.' Opp'n to City of Edina at 5, Jan. 30, 2015, Docket No. 79.)  The Court will also dismiss those claims.

DPPA, arguing that driver's license information cannot be "obtain[ed]" simply by viewing or accessing it. The Eighth Circuit, however, has recently reached the same conclusion as in *Myers*. *McDonough*, 2015 WL 4940110, at *8 ("In the context of the DPPA, the word 'obtain' unambiguously includes access and observation of the data."); *see also Nelson v. Jesson*, No. 13-340, 2013 WL 5888235, at *2 (D. Minn. Nov. 1, 2013) ("In the Court's view, information may be 'obtained' simply through viewing."). The first and third elements are not in dispute in this case. Consequently, the Court concludes that the Meldahls have made plausible allegations against the remaining defendants as to the first three elements.

To establish the fourth element, the Meldahls must show that the "obtainment, disclosure, or use was not for a purpose enumerated under [18 U.S.C.] § 2721(b)." *Taylor*, 612 F.3d at 335 (internal quotation marks omitted). One of the permitted purposes under Section 2721(b) – the one most relevant to this case – is "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." 18 U.S.C. § 2721(b)(1). In addition, Section 2721(b)(4) permits accesses "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court." *Id.* § 2721(b)(4).

This Court in *Myers* considered how a plaintiff might demonstrate plausibly that an access was not for a proper purpose. In that case, the Court concluded that the

plaintiff had pled against several cities and counties allegations with sufficient detail to survive a motion to dismiss, where she listed eighty-four obtainments of her information and where she alleged the following facts:

> [H]er professional prominence [as an attorney] and ties to law enforcement, the timing and number of the searches [some of which occurred late at night], her husband's profession [as a law enforcement official], the fact that the searches were by name, the fact that she had not committed any criminal behavior or been tied to any criminal investigation, and the Legislative Auditor's telling report on misuse of the DVS Database.

*Myers*, 2014 WL 7399182, at \*14, \*17; *see also Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1057 (D. Minn. 2014) (alleging that the defendants were interested in plaintiff based on her role as an attorney and in the community, and where, as a result, most of the lookups of plaintiff were in the areas where she worked).

More recently, the Eighth Circuit in *McDonough* has thoroughly analyzed how a plaintiff might demonstrate a plausible DPPA claim. *McDonough*, 2015 WL 4940110, at \*9-\*17. In that case, the court noted that claims against each defendant must be assessed independently, but not in isolation. *Id.* at \*10. The court also clarified that, in conducting an analysis of suspicious patterns of accesses by law enforcement, a court need not rely only on accesses that are within the limitations period. *Id.* ("[A]llegations concerning data accesses that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims.").

The court reversed district court dismissals of DPPA claims against certain defendant agencies, along with the related unnamed Law Enforcement Does, where plaintiffs had alleged:

(1) a large total number of accesses;

(2) that he or she had committed no crimes that would justify the accesses;

(3) professional relationships with law enforcement "or a degree of local fame," even if no allegation of a specific relationship with particular officers or agents;

(4) the legislative auditor's report on misuse of the DVS Database; and,

(5) most importantly, a suspicious access pattern at the defendant entity or agency against whom the claim was asserted, including "accesses on the same day or within a few hours of accesses by other, unrelated entities during the limitations period[,] . . . multiple late-night accesses during the limitations period[,] or . . . a history of frequent suspicious accesses fitting the above criteria, even if prior to the limitations period, coupled with accesses within the limitations period."

*Id.* at *10-*17. The court cautioned that generalized allegations of fame or ties to law enforcement, or that a plaintiff had never committed a crime, are not enough, alone, to nudge a complaint across the line to plausibility. *Id.* at *10-*11. Critical for asserting plausible claims against a specific defendant are allegations that the defendant in question had a suspicious pattern of accesses. *Id.* at *11. Nevertheless, even where a large number of accesses, or suspicious pattern of accesses may have occurred, the court also noted that generalized allegations of fame or ties to law enforcement do not help explain "why [a plaintiff] would garner Law Enforcement Does' interest." *Id.* at *17 (affirming the dismissal of one plaintiff's DPPA claims where there were a large number of accesses, but where the plaintiff had not alleged many suspicious accesses, had not shown underlying facts that would explain law enforcement's interest in him, and had not alleged that he had never committed any crimes in the defendant communities).

### 2. The Meldahls' Allegations

As noted above, the Meldahls have asserted a variety of allegations to support the plausibility of their claims. Many of their allegations are similar to the plaintiffs' allegations in *Myers* and *McDonough*. Focusing on the Eighth Circuit's recent clarifying guidance on DPPA claims in *McDonough* – specifically the five factors discussed above, *see id.* at *10-*17, the Court finds that the Meldahls have made credible general allegations that there were a large total number of accesses of their information and that they had not committed crimes, been investigated, or otherwise been involved in a criminal, civil, or arbitral proceeding tied to the accesses underlying their claims. They have also cited the Legislative Auditor's report on misuse of the DVS Database. As a result, the Court will focus its analysis on generalized claims of fame or notoriety that would credibly garner law enforcement attention and specific allegations against individual defendants of suspicious access patterns. *Id.* at *12-*17. The Court will also examine whether there are reasonable alternative explanations from the defendants that may explain certain accesses (e.g., evidence that the Meldahls were involved in a proceeding in a defendant community at a given time that may explain an access, despite the Meldahls' assertions to the contrary).[6] *See id.*

---

[6] Some defendants argue that qualified immunity protects their officers from the Meldahls' DPPA action. (Ramsey County Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 15-25, Jan. 13, 2015, Docket No. 65 ("Ramsey Count Defendants are entitled to qualified immunity because . . . the plain language of the DPPA does not clearly establish that merely viewing information on a computer, by one with legitimate access to the data, would violate the statute . . . .").) Based on recent Eighth Circuit precedent, the Court will reject that argument.

(Footnote continued on next page.)

### a.      Allegations of Notoriety or Ties to Law Enforcement

First, as to generalized allegations of fame or notoriety, Steven alleges that he is a well-known and largescale landlord.  Indeed, he claims he is one of the largest landlords in Minneapolis and is frequently battling the Minneapolis Housing Department, and is otherwise involved in significant landlord/tenant/rental property litigation.  Indeed, even the City of Minneapolis, in its brief, implicitly notes how well known Steven is by citing a Star Tribune story about him.  (Mem. in Supp. of Minneapolis's Mot. to Dismiss at 16-17, Dec. 19, 2014, Docket No. 32.)  Claudia is tied to Steven's notoriety, of course, by virtue of the fact that they are married.  In addition, Claudia was stalked by a man whose relative worked in law enforcement.

The Court finds that these allegations are sufficient to "explain why [the Meldahls] would garner Law Enforcement Does' interest."  *McDonough*, 2015 WL 4940110, at *17.  Neither Meldahl has alleged the level of notoriety asserted by some of the plaintiffs in *McDonough*.  Plaintiff Johanna Beth McDonough, for example, is a well-known

_____

(Footnote continued.)

*See McDonough*, 2015 WL 4940110, at *8 n.6 ("Because the meaning of 'obtain' in this context is unambiguous, [the defendants'] various arguments that depend on interpreting ambiguity in their favor fail.  Their contention that qualified immunity applies to Law Enforcement Does' conduct because the meaning of 'obtain' is unclear also fails for the same reason."); *see also Collier v. Dickinson*, 477 F.3d 1306, 1311-12 (11th Cir. 2007) ("We find that the plain language of the [DPPA] and the case law gave clear notice to Defendants that releasing the information in question violated federal law."); *Mallak*, 9 F. Supp. 3d at 1063.  For similar reasons, the Court will reject the argument by Ramsey County – and adopted by reference by other defendants – that the rule of lenity saves them from the interpretation of the DPPA adopted by this Court, the Eighth Circuit, and others.  The DPPA provisions at issue here do not present the sort of "grievous ambiguit[ies]" found in other statutes that are subject to the rule of lenity.  *See Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013) (internal quotation marks omitted).

- 17 -

television reporter, covering the crime beat for at least some of her career.  *Id.* at *14. Steven in particular, however, has alleged a substantial reputation in Minneapolis, and the Twin Cities more broadly, as a largescale landlord.  Moreover, he alleges that he has engaged in legal battles with Minneapolis in particular and has worked to change and amend ordinances and rules with which he disagrees.  At least at the motion-to-dismiss stage, where the Court must accept as true Steven's allegations, the Court finds that Steven has met his burden of showing a generalized level of notoriety that would garner law enforcement interest.  Indeed, his is the sort of notoriety with which the DPPA might be especially concerned: an active citizen who challenges ordinances and fights battles with the city and who, as a result, garners personal interest, curiosity, and even disdain from myriad government officials who might use the DVS Database to access his information.  Of course, the Court makes no conclusions about what is actually motivating accesses of Steven's information.  But at this stage, taking Steven's allegations as true, he has certainly given plausible reasons why officials might seek out his information.

While Claudia's case is not as strong as Steven's, her ties to Steven and her stalker's ties to law enforcement are, at this stage, also enough to assert plausible, generalized allegations of notoriety and ties to law enforcement that would garner law enforcement attention.  At a minimum, both Meldahls have certainly alleged more than the plaintiff in *Potocnik*, which the Eighth Circuit noted had not pleaded any "underlying facts that explain why he would garner Law Enforcement does' interest."  *Id.* at *17.

b.      **Suspicious Access Patterns**

Finally, the Court will consider whether allegations of "suspicious access patterns and timing of accesses" exist against each defendant, sufficient to move claims against each defendant across the line to plausibility.   *Id.* at *11 (internal quotation marks omitted).  Again, the Court is looking specifically for

> 1) accesses on the same day as or within a few hours of access by other, unrelated entities during the limitations period; 2) multiple late-night accesses during the limitations period; or 3) a history of frequent suspicious access fitting the above criteria, even if prior to the limitations period, coupled with accesses within the limitations period.

*Id.* at *13.  The Court will also consider whether obvious alternative explanations exist to explain certain accesses.

In general, the Meldahls have alleged suspicious access patterns, especially prior to the limitations period.  They allege over twenty late-night accesses (i.e., between the hours of 11:00 p.m. and 6:00 a.m., including an access at 10:59 p.m.).  *See id.* (labeling late-night accesses as being between 11:00 p.m. and 6:00 a.m.).   They also allege multiple lookups, close in time, by unrelated entities.  On May 11, 2007, there were lookups of Claudia by the Sauk Centre Police Department and the Todd County Sheriff, one around 9:00 p.m. and one around 11:00 p.m.  Sauk Centre is close to Todd County, to be sure, but these two nighttime searches by different law enforcement entities are sufficiently unrelated to be suspicious.  On July 19, 2007, there were early morning searches – within the same hour – of Claudia by the McLeod County Sheriff and of

Steven by the Eden Prairie Police Department.[7]  The volume of suspicious searches is not as great as some of the plaintiffs in *McDonough*.  *See id.* at *14 (noting that one plaintiff had alleged 58 late-night accesses and that some 46 different agencies had looked up her information 178 times during a 6-day period).  Nevertheless, the Eighth Circuit did not draw a hard line for what constitutes a suspicious pattern.  Indeed, it found a suspicious pattern where far fewer searches were alleged: a different plaintiff had alleged 37 late-night searches and accesses by three unrelated agencies on the same day.  *Id.* at *16.

Here, the Meldahls have sufficiently made generalized allegations of suspicious accesses; the critical question is whether there are suspicious accesses attributable to defendants who have also made accesses within the limitations period.  *See, e.g.*, *id.* at *15 (dismissing claims against seven agency defendants because those defendants "did not have a history of frequent suspicious accesses, and Law Enforcement Does did not, during the limitations period, engage in multiple late-night accesses or participate in any suspicious access patterns through these agencies").  It is not entirely clear from *McDonough* whether a plaintiff must assert **both** late-night accesses **and** close-in-time accesses by unrelated agencies; it appears though that alleging enough of one would be sufficient to survive a motion to dismiss.  *Id.* at *16 (reversing dismissal of claims against four agencies because they had "multiple late-night accesses within the limitations

---

[7] Some of the defendants argue that multiple accesses within the same minute or two, especially if by the same user, constitute a single access.  The Court rejects this argument, concluding instead that, under the plain language of the DPPA, "every impermissible access of [the Meldahls'] private data, regardless of how close in time each access was, serves as a basis for [the Meldahls'] DPPA claims."  *Rollins v. City of Albert Lea*, 79 F. Supp. 3d 946, 982 (D. Minn. 2014).

period; accesses within the limitations period on the same day or within a few hours of accesses through other, unrelated agencies; **or** a history of frequent suspicious accesses prior to the limitations period" (emphasis added)).

As for Hennepin County, none of the accesses – either those that are time-barred or voluntarily dismissed, or the four accesses that are within the limitations period – occurred late at night.  (Compl., Ex. B at 5-6).  In two instances, accesses by the Hennepin County Sheriff's Office occurred within two days of accesses by one other entity.  (Compl., Ex. B at 5-6, 8.)  In another instance, an access by Hennepin County of Steven's information fell roughly thirty hours before an access of Claudia's information.  (Compl., Ex. A at 1; *id.*, Ex. B at 5.)  Given the complete lack of late-night searches, however, it is more problematic for the Meldahls' case that these close-in-time and unrelated searches are minimal and not "on the same day or within a few hours" of each other.  *Id.* at *13.  As a result, the Court finds that the Meldahls have not alleged a suspicious access pattern against Hennepin County and will grant the county's motion to dismiss as to the rest of the Meldahls' claims against it.

As to Minneapolis, only one access, falling outside the limitations period, was between 11:00 p.m. and 6:00 a.m.  (Compl., Ex. B at 7.)  As for close-in-time accesses by unrelated agencies, on January 13, 2012, the Minneapolis Police Department accessed Steven's information on the same day as Hennepin County.  (Compl., Ex. B at 5, 7.)  However, the Meldahls voluntarily dismissed their claims based on that Hennepin County access, accepting Hennepin County's alternative explanation that the search was for a permissible purpose.  As a result, the Hennepin County access is not unexplained and the

Court will not consider it in its analysis.  *Cf. McDonough*, 2015 WL 4940110, at *11.

The only other suspicious access pattern is that the Minneapolis City Attorney's Office

accessed Steven's information the same day as the Eden Prairie Police Department

accessed Claudia's.  (Compl., Ex. A at 2; *id.*, Ex. B at 6.)  The Court concludes that these

two incidents are not enough to constitute a suspicious pattern.  One close-in-time set of

accesses, involving only two entities, combined with only one late-night access, is not

quite enough in this case[8] to push the Meldahls' claims against Minneapolis over the line

to plausibility.  As a result, the Court will grant the City of Minneapolis's motion to

dismiss in full.  *See McDonough*, 2015 WL 4940110, at *13 (noting that a key factor for

demonstrating plausibility is "**multiple** late-night accesses" (emphasis added)).

As to the motion to dismiss by the Cities of Brooklyn Center, Crystal, Eden

Prairie, Excelsior, Greenwood, LeCenter, New Hope, Prior Lake, Sauk Centre,

Shorewood, and Tonka Bay, only claims against Prior Lake and Eden Prairie remain.

None of the accesses by Prior Lake occurred late at night, nor were they close in time to

accesses by unrelated entities.  As a result, the Court will dismiss Steven Meldahl's claim

against Prior Lake.  Finally, two searches by Eden Prairie, prior to the limitations period,

occurred late at night.  (Compl., Ex. B at 4.)  Moreover, Eden Prairie accesses of Steven's

information occurred at roughly 4:00 a.m., within an hour of McLeod County's access of

---

[8] The Court notes that DPPA cases are fact specific and the Eighth Circuit consequently avoided articulating any set rules or numeric thresholds for what constitutes a plausible claim in each case.  Indeed, the strength of a plaintiff as to each factor might influence what is required as to other factors in a different case.  For example, in a case involving someone with much greater notoriety or fame than the Meldahls, the close-in-time and late-night accesses committed by the City of Minneapolis might be enough to demonstrate plausibility.

Claudia's information.  (Compl., Ex. A at 3; *id.*, Ex. B at 4.)  As noted above, in another instance, the Minneapolis City Attorney's Office accessed Steven's information the same day as the Eden Prairie Police Department accessed Claudia's.  (Compl., Ex. A at 2; *id.*, Ex. B at 6.)  Eden Prairie offers no obvious alternative explanation for these searches. Although the suspicious pattern as to Eden Prairie is close to the line, the Court finds that the combination of multiple late-night accesses and close-in-time accesses of a well-known couple's information, along with a search within the limitations period, is enough to demonstrate plausible DPPA allegations against Eden Prairie.  Importantly, unlike with Minneapolis, the case against Eden Prairie involves more than one of each suspicious access type.  The Court will deny the cities' motion to dismiss as to Claudia Meldahl's claims against Eden Prairie.

As for Edina, there was one late-night search, but no close-in-time accesses by Edina along with unrelated entities.  The single late-night search is not enough to constitute a suspicious pattern.  As a result, the Court will grant in full Edina's motion for judgment on the pleadings.  Next, Ramsey County only accessed Steven's information once, within the limitations period, at 9:51 a.m.  That single search is not enough to demonstrate a suspicious pattern.  The Court will grant in full Ramsey County's motion to dismiss.

Finally, the Court considers claims against the remaining counties: Carver, Clay, and Wright Counties.  The Wright County accesses all occurred within the limitations period.  They occurred during normal business hours and did not coincide with close-in-time searches by unrelated entities.  As a result, the Court will dismiss the Meldahls'

claims against Wright County.  Similarly, the accesses by Clay County all occurred on the same say, within the limitations period, during normal business hours.  They did not occur on the same day as searches by unrelated entities.  The Court will consequently dismiss all claims against Clay County.

The Court will deny the counties' motion to dismiss, however, as to Carver County.  Carver County officials engaged in ten late-night accesses of Claudia's information.  (Compl., Ex. A at 1-2.)  Moreover, Carver County accessed Claudia's information within the same thirteen hour period as Minneapolis parks officers accessed Steven's.  (Compl., Ex. A at 1; *id.*, Ex. B at 8.)  Again, while the allegations against Carver County are slimmer than those by plaintiffs in *McDonough*, they are also greater than the number of suspicious accesses alleged against Minneapolis in this case.  Given the significant number of late-night accesses by Carver County, and the sheer number of accesses by Carver County overall, the Court concludes that Claudia Meldahl has met her burden as to this county.

### C.      DPS Defendants

The Meldahls' also asserts claims under the DPPA against the current, and former, DPS Commissioner, and other unnamed DPS officials ("DPS defendants").  (Compl. ¶¶ 200-77, 326-85.)  This Court rejected similar claims against DPS defendants in *Gulsvig v. Mille Lacs County*, No. 13-1309, 2014 WL 1285785, at *6, *9 (D. Minn. Mar. 31, 2014).  In their response, the Meldahls do not address *Gulsvig*, nor do they provide any compelling reason for the Court to reject its reasoning and conclusion in that

case. Consequently, the Court will grant the DPS defendants' motion to dismiss. *See also*, *McDonough*, 2015 WL 4940110, at *17-*19 (concluding, at a minimum, that qualified immunity protected the DPS defendants because the court could not "say that, at the time of the alleged accesses, any reasonable official would have understood that DPS's policy of allowing the above-described government employees password-protected access to the database violated Drivers' rights under the DPPA"); *Myers*, 2014 WL 7399182, at *21.

## III.   SEVERANCE

As to the remaining DPPA claims, the Court will reject the defendants' request to sever them. Federal Rule of Civil Procedure 20(a)(2) allows for the permissive joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The defendants claim the allegedly illegal accesses are not joint actions, but are simply similar actions taken by unrelated defendants not colluding in any way. *Bass v. Anoka Cty.*, 998 F. Supp. 2d 813, 825 (D. Minn. 2014) ("A plaintiff may not join defendants on the mere basis of **similar** transactions – the rule permitting joinder requires that a right to relief arise from the **same** transactions." (internal quotation marks and alterations omitted)).

The Court concludes that severance is not appropriate at the motion-to-dismiss stage. As in *Myers*, here it is "not yet readily apparent whether the alleged wrongdoing in

this case amounts to a series of unrelated actions, or is more systematic." *Myers*, 2014 WL 7399182, at *22.  The Court will deny the defendants' motion for severance.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant Hennepin County's Motion to Dismiss [Docket No. 24] is **GRANTED**.  The Meldahls' claims against Hennepin County are **DISMISSED with prejudice**.

2.     Defendant City of Minneapolis's Motion to Dismiss [Docket No. 31] is **GRANTED**.  The Meldahls' claims against the City of Minneapolis are **DISMISSED with prejudice**.

3.     Defendant Minneapolis Park & Recreation Board's Motion to Dismiss [Docket No. 35] is **GRANTED**.  The Meldahls' claims against the Minneapolis Park & Recreation Board are **DISMISSED with prejudice**.

4.     The Motion to Dismiss or Sever of the Cities of Brooklyn Center, Crystal, Eden Prairie, Excelsior, Greenwood, LeCenter, New Hope, Prior Lake, Sauk Centre, Shorewood, and Tonka Bay [Docket No. 44] is **GRANTED in part** and **DENIED in part**.

   a.     The motion is **GRANTED** as to Meldahls' time-barred claims against these cities which are based on accesses that occurred prior to October 23, 2010, and those claims are **DISMISSED with prejudice**.  Based on the statute of

limitations, all claims against Brooklyn Center, Crystal, Excelsior, Greenwood, LeCenter, New Hope, Sauk Centre, Shorewood, and Tonka Bay, are **DISMISSED with prejudice**.

      b.      The motion is **GRANTED** as to Meldahls' claims against Prior Lake and those claims are **DISMISSED with prejudice**.

      c.      The motion is **DENIED** in all other respects, including the cities' alternative request to sever the case.

    5.    Defendant City of St. Paul's Motion to Dismiss [Docket No. 50] is **GRANTED**.  The Meldahls' claims against the City of St. Paul are **DISMISSED with prejudice**.

    6.    Defendant City of Edina's Motion for Judgment on the Pleadings [Docket No. 57] is **GRANTED**.  The Meldahls' claims against the City of Edina are **DISMISSED with prejudice**.

    7.    Defendant Ramsey County's Motion to Dismiss [Docket No. 62] is **GRANTED**.  The Meldahls' claims against Ramsey County are **DISMISSED with prejudice**.

    8.    The DPS Defendants' Motion to Dismiss [Docket No. 69] is **GRANTED**. The Meldahls' claims against the DPS defendants are **DISMISSED with prejudice**.

    9.    Defendant Counties of Carver, Clay, McLeod, Todd, and Wright's Motion to Dismiss or Sever of [Docket No. 72] is **GRANTED in part** and **DENIED in part**.

      a.      The motion is **GRANTED** as to Meldahls' time-barred claims against these counties which are based on accesses that occurred prior to

October 23, 2010.  Those claims are **DISMISSED with prejudice**.  Based on the statute of limitations, all claims against McLeod and Todd Counties are **DISMISSED with prejudice**.

      b.     The motion is **GRANTED** as to Meldahls' claims against Clay and Wright Counties and those claims are **DISMISSED with prejudice**.

      c.     The motion is **DENIED** in all other respects, including the counties' alternative request to sever the case.

DATED:   November 9, 2015
at Minneapolis, Minnesota.

                     s/ John R. Tunheim
                     JOHN R. TUNHEIM
                     Chief Judge
             United States District Court